SLOVITER, Chief Judge,
concurring.
I join in all of the majority’s opinion except for Part III. As to that, I concur in the holding that the district court correctly ruled that plaintiff was entitled to proceed under the Jones Act and general American maritime law.
My reluctance to join in Part III does not stem from disapproval of any particular language or factor that the majority uses in its remarkable exegesis of the issue of choice of law in Jones Act cases. Instead, I write separately because I believe that the steps that the majority imposes on the district courts, and of course on the lawyers who must present their respective positions to those courts, are simply too cumbersome to be workable. I believe that they are entitled to something more direct and straightforward from us, even at the risk that the analysis set forth in the opinion might not cover every case in the foreseeable future. After all, we will have other opportunities to return to this issue as new cases present new facts.
As I understand the majority opinion, a district court would have to perform the following choice-of-law analysis to determine if United States law applies. First, as a threshold inquiry, the district court must determine “if there is a basis for prescriptive jurisdiction” by ascertaining whether at least one of the following five factors is present: (1) injury to an American seaman or a seaman with American dependents; (2) injury in American territory; (3) American defendants; (4) an American flagged ship; (5) a contractual choice-of-law clause specifying American law. In connection with this threshold, the majority opinion refers to sections 402(2), 402(l)(a), 402(l)(c), and 502 of the Restatement (Third) of Foreign Relations Law as instructive.
At the second stage, the district court must ascertain whether application of American law is reasonable under the circumstances. Instead of proceeding to an application of the factors from the triad of Lauritzen v. Larsen, 345 U.S. 571, 73 S.Ct. 921, 97 L.Ed. 1254 (1953), Romero v. International Terminal Operating Co., 358 U.S. 354, 79 S.Ct. 468, 3 L.Ed.2d 368 (1958), and Hellenic Lines Ltd. v. Rhoditis, 398 U.S. 306, 90 S.Ct. 1731, 26 L.Ed.2d 252 (1970), as has been the practice of this court and the Supreme Court, the majority first sets forth an eight-factor test derived from section 403 of the Restatement (Third) on Foreign Relations requiring district courts to evaluate, inter alia, (a) the link of the activity to the territory of the regulating state, ie., the extent to which the activity takes place within the territory, or has substantial, direct and foreseeable effect upon or in the territory; (b) the connections, such as nationality, residence, or economic activity, between the regulating state and the *205 person principally responsible for the activity to be regulated, or between that state and those whom the regulation is designed to protect; (c) the character of the activity to be regulated, the importance of regulation to the regulating state, the extent to which other states regulate such activities, and the degree to which the desirability of such regulation is generally accepted; (d) the existence of justified expectations that might be protected or hurt by the regulation; (e) the importance of the regulation to the international political, legal, or economic system; (f) the extent to which regulation is consistent with the traditions of the international system; (g) the extent to which another state may have an interest in regulating the activity; and (h) the likelihood of conflict with regulation by another state. While there may be some overlap with elements of the Lauritzen factors, the inquiry required is different. Under this stage of the analysis, Romero and Rhoditis are to serve as “benchmarks.” Majority Op. at 186-87 n. 19.
It is only after the majority engages in a lengthy explication of these presumably preliminary considerations, with its lengthy, albeit learned, commentary on numerous issues, including the complicated burden shifting with which the dissent takes issue, that the majority analyzes the circumstances of Neely’s accident under the factors identified by the Supreme Court in Lauritzen/Rome-ro/Rhoditis. It lists the Lauritzen factors in the following order: 1) inaccessibility of a foreign forum; 2) law of the forum; 3) place of the wrongful act; 4) place of contract; 5) law of the flag; 6) defendants’ allegiance, bases of operations and other contacts with the United States; and 7) domicile or allegiance of injured seaman.
I fail to see any justification for adding layers of complexity to the Lauritzen inquiry which already had sufficient flexibility to take into account additional factors when needed or to permit adaption of the listed factors, when appropriate. In fact, in its own analysis of the Lauritzen factors the majority uses that flexibility to take into consideration the fact that Neely was involved in a “nontraditional” maritime activity, employed as a scuba instructor at the exclusive Club Med resort rather than as a seaman engaged in international shipping.
I can glean only two possible explanations within the majority’s opinion for its having added the additional layers. One appears to be the majority’s concern about “the lack of guidance” provided by the Supreme Court in its opinions. The majority notes that a trial court in Texas was “troubled” and “[a]ca-demic commentary has been similarly critical” of the flexibility of the Lauritzen factors. See Majority Op. at 182. However, Justice Douglas emphasized in Rhoditis that the Lauritzen factors were “not intended as exhaustive.” 898 U.S. at 309, 90 S.Ct. at 1734. The Supreme Court apparently intended just that flexibility that the majority seeks to curb.
The other basis for the majority’s bifurcated inquiry may be to ensure that exercising prescriptive jurisdiction over the claim does not offend due process. Later in the opinion the majority refers to our earlier opinion in DeMateos v. Texaco, Inc., 562 F.2d 895, 901 (3d Cir.1977), cert. denied, 435 U.S. 904, 98 S.Ct. 1449, 55 L.Ed.2d 494 (1978), where we stated, “[T]he underlying purpose for identifying and weighing factors is ... to determine whether within the limits of due process [the Jones] Act could, and within the limits of the assumed congressional deference to the conventions of international law [the Jones] Act should, be applied to the transaction in question.”.
While I do not discount the need to assure that the contacts with United States interests are sufficiently substantial to warrant application of United States law, particularly because such questions intersect with concerns of foreign nations and their nationals, I believe that such assurance is afforded by application of the flexible Lauritzen factors. If a balancing of the Lauritzen factors in the persuasive manner employed by the majority opinion leads to a conclusion that application of United States law is reasonable, I think it is inevitable that such application will comport with due process. Indeed, that may be true because many of the factors the majority enunciates in its bifurcated analysis are already included among the Lauritzen fac *206 tors. Many of the additional factors discussed by the majority in its threshold and second step inquiries can appropriately be weighed among or in addition to the Laurit-zen factors in a given case without imposition of its formalistic and multifaceted inquiries. These include some of the factors listed in the Restatement (Third) of Foreign Relations, to the extent relevant to the ultimate question whether application of United States law is reasonable.
Inasmuch as I believe that the Jones Act cases decided by the Supreme Court already provide a workable set of non-exhaustive factors capable of responsible implementation through the sound exercise of judgment by the district court, with review by the appellate courts, I find the imposition of yet additional tests and lists of factors superfluous for the question at hand. I would focus primarily on the Lauritzen factors, as does the dissent.
However, I do not join the dissent because I am satisfied that Neely met her burden of demonstrating the substantiality of relevant factors such that United States law might reasonably apply to this suit. The issue of the weighing of the factors in this case is a close one, and I have little to add to the respective analyses. As the district court recognized, the instruction of the Supreme Court in Lauritzen was that it is a “venerable and universal rule of maritime law” to give “cardinal importance to the law of the flag,” 345 U.S. at 584, 73 S.Ct. at 929, and that “the weight given to the ensign overbears most other connecting events in determining applicable law.” Id. at 585, 73 S.Ct. at 929. Although the district court initially found that “the diving vessel flies the flag of St. Lucia,” after considering plaintiffs allegations the court concluded that there were “serious questions” whether the diving vessel flew a “flag of convenience,” and chose to treat the law of the flag as a neutral factor.
As I suggested above, I believe the majority’s Lauritzen weighing is more compelling than that of the dissent. Indeed, I believe that the district court, notwithstanding its confusion of the issue of subject matter jurisdiction and choice of law under the Lauritzen inquiry, gave appropriate weight to the factors upon which there was sufficient evidence and treated those as neutral upon which there was insufficient evidence to render an informed conclusion. Plaintiff does bear the ultimate burden of proving which law should apply, but I believe that there are sufficient factors that tilt toward United States law, as both the majority and the district court concluded, to make application of that law reasonable. Thus I concur in that holding.